IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROSE TOWNSEND TRUST FOR DONALD TOWNSEND, by and through JACK RILEY and ROBERT MOE, | ) ) ) | No. 31203-8-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SCOTT R. SMITH, Attorney at Law; DELAY, CURRAN, THOMPSON, PONTAROLO, & WALKER, P.S. | ) ) ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, C.J. — The trial court dismissed this lawyer malpractice action at summary judgment for lack of evidence that the attorney breached the standard of care. Although expert witness testimony is not necessary for all Washington legal malpractice actions, such testimony was essential and missing in this case. We affirm.

FACTS

The procedural history of this action is lengthy. It had its beginnings in the mid-1990s when the Rose Townsend Trust for Donald Townsend (Trust) leased commercial space to Daryl Johnston. Johnston later breached and defaulted on the lease and an accompanying promissory note. The Trust, represented by its longtime counsel Scott R.

Smith (Smith), ultimately obtained a judgment against Johnston for $76,147.31 (Johnston State Court Judgment). Smith recorded the judgment with the Spokane County Auditor on October 27, 1998. Smith obtained a second judgment for $700 in attorney fees and costs. That judgment was not recorded.

Johnston filed for bankruptcy the next year under chapter 7 of the bankruptcy code. She was co-owner with Sally Arney of real estate in Spokane County that served as their primary residence. The two owned the land as joint tenants with right of survivorship. On April 9, 2004, Smith filed a creditor's claim on behalf of the Trust in the amount of $83,183.37 as an unsecured claim in the bankruptcy action.

The trustee in the Johnston 1999 bankruptcy proceeding obtained a default judgment against Ms. Johnston because she had committed fraud and concealed property of the bankruptcy estate—an inheritance Ms. Johnston had received from her mother in the amount of $132,044.73. Thus, the same amount was awarded in the default judgment (Johnston Bankruptcy Judgment). Additionally, because Ms. Johnston had transferred $80,000 of that $132,044.73 inheritance to Ms. Arney, the chapter 7 trustee secured a default judgment in the amount of $80,000 against Ms. Arney as a part of Ms. Johnston's chapter 7 proceeding (Arney Bankruptcy Judgment). The chapter 7 trustee held both judgments.

On January 24, 2001, the chapter 7 trustee faxed a cover sheet to attorney Smith that stated "Judgments for Sale! Judgments for Sale! Note: The $80,000 is included in

2

the $132,044.73." The chapter 7 trustee continued to urge the Trust to purchase the Johnston Bankruptcy Judgment and the Arney Bankruptcy Judgment into March of 2004.

Ms. Johnston and Ms. Arney refinanced their home in October 2004 receiving a distribution from the refinance of $81,270.89. They refinanced again through New Century in April 2005 and received a distribution of $16,808.73. Neither the Johnston State Court Judgment nor the Johnston or Arney Bankruptcy Judgments were satisfied during the two refinancing processes.

Around July 2005, the Trust contacted attorney Joseph Delay of the law firm Delay, Curran, Thompson, Pontarolo & Walker, P.S. (Delay Curran), requesting his assistance in purchasing the two bankruptcy judgments. Delay and the attorney for the bankruptcy trustee drafted an "Assignment of Judgment" for both bankruptcy judgments (Assignment). The Assignment stated that the Trust waived its creditor's claim against Ms. Johnston in exchange for the Assignment of the bankruptcy judgments.[1] On July 25, 2005, the attorney for the chapter 7 trustee filed the Assignment. Neither the Assignment nor the bankruptcy judgments for $132,044.73 and $80,000 were recorded with the Spokane County Auditor.

---

[1] The exact language stated "attorney for Chapter 7 Trustee in consideration of the Assignee waiving its Creditor's Claim filed in the above entitled estate, does hereby assign, transfer and convey over unto the Rose Townsend Trust the judgment entered in the above-entitled cause." Clerk's Papers (CP) at 269.

3

On October 13, 2005, Ms. Johnston filed a chapter 13 action in the United States

Bankruptcy Court for Eastern Washington. Ms. Arney filed a chapter 7 action on the

same day. The Trust filed a secured proof of claim in the chapter 13 proceeding in the

amount of $206,973.79 against Ms. Johnston's homestead property.

A dispute arose regarding priority of liens as between the Trust and New Century,

the last mortgagor on the homestead property. This dispute went through two federal

district court judges: Patricia Williams and, on appeal, Lonny R. Suko. Both judges

found that the Trust had priority over New Century by way of the recorded Johnston

State Court Judgment, and that the Assignment did not waive the Trust's right to enforce

that judgment. Both judges also ruled that the Assignment did not have to be recorded to

be a lien against the property by virtue of RCW 4.56.200(1).

New Century appealed to the Ninth Circuit, which reversed both district court

judges and found in favor of New Century. The Ninth Circuit concluded that the waiver

language of the Assignment cost the Trust the priority of its 1998 Johnson State Court

Judgment. The court also ruled that the failure to record either the Assignment or the

bankruptcy judgments meant that they were not perfected against the homestead by

operation of RCW 6.13.090.[2] The Ninth Circuit concluded that RCW 6.13.090 governed

---

[2] In part, RCW 6.13.090 provides that a judgment "shall become a lien on the value of the homestead property in excess of the homestead exemption from the time the judgment creditor records the judgment with the recording officer of the county where the property is located."

4

rather than RCW 4.56.200(1), which provides that judgments entered in the county where the debtor's real property is located become liens on the realty. *See In re Johnston* No. 07-36035 (9th Cir. May 20 2009) (unpublished).

In the aftermath of the Ninth Circuit ruling, the Trust filed a legal malpractice action against both Smith and Delay Curran in June 2010. The second amended complaint filed that November alleged that Delay Curran had improperly drafted the Assignment. That complaint also alleged that Smith was negligent in his handling of the judgments and should have been aware that the Assignment would cost the Trust its judgment priority.

Discovery ensued over the next two years. In 2011, Delay Curran successfully sought summary judgment of dismissal on the basis that the statute of limitations had run on the claim against it, with the court determining that the Trust was on notice from the time Smith voiced concerns about the Assignment. The court rejected the Trust's argument that no cause of action arose until the Ninth Circuit ruling since there was no harm to the Trust until that point. The Trust did not appeal from the order dismissing Delay Curran from the case.

In 2012, Smith also sought summary judgment, arguing that the Trust could not show that he had violated the standard of care. The Trust contested the motion and also sought permission to amend its complaint again to assert that Smith also was negligent in

5

failing to advise the Trust to file a malpractice action against Delay Curran within the statute of limitations.

The trial court granted the motion to dismiss, concluding that without expert witnesses the Trust would be unable to establish that Smith breached the standard of care by failing to record the Assignment. With the trial date in the offing, it was too late to add witnesses, so the court declined to permit an amendment. The action against Smith was dismissed. In the course of the oral ruling, the trial judge commented that she had perhaps erred in dismissing Delay Curran from the case. She also noted that as trial judge, she would have needed expert testimony to determine whether or not counsel erred. After reconsideration was denied, the Trust timely appealed to this court.

## ANALYSIS

The Trust argues that the trial court erred in granting summary judgment and in denying the motion to amend. We address those two arguments in the noted order.

*Summary Judgment*

The Trust argues that summary judgment was inappropriate in this bench trial action because no expert witness was necessary and Smith would himself establish the standard of care with respect to the claim against Delay Curran. We agree with the trial court that expert testimony concerning the standard of care was necessary in this case.

Appellate courts review appeals from dismissals on summary judgment under well settled standards. The moving party bears the initial burden of establishing that it is

6

entitled to judgment because there are no disputed issues of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If a defendant makes that initial showing, then the burden shifts to the plaintiff to establish there is a genuine issue for the trier of fact. *Id.* at 225-26. The plaintiff may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, it must put forth evidence showing the existence of a triable issue. *Id.*

The elements of a legal malpractice action are: (1) an attorney-client relationship that gives rise to a duty of care, (2) an act or omission by the attorney in breach of that duty, (3) damage to the client, and (4) proximate causation between the breach of duty and the damage incurred. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). A legal malpractice trial effectively requires a trial within a trial. The trier of fact must decide if the underlying cause of action would have resulted in a favorable verdict for the client; only then is the suit against the attorney viable. *Daugert v. Pappas*, 104 Wn.2d 254, 258, 704 P.2d 600 (1985). The standard of care is uniform throughout the state of Washington: "that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction." *Cook, Flanagan & Berst v. Clausing*, 73 Wn.2d 393, 395, 438 P.2d 865 (1968).

Some states require expert testimony to establish the standard of care in a legal malpractice action. *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979). However, the "general rule is to permit but not require expert testimony." *Id.* Washington does not require expert testimony "when the negligence charged is within the common knowledge of lay persons." *Id.* The court concluded that establishing the malpractice alleged there, involving negligence in the trial of a maritime case, did require testimony from an expert. *Id.*

Both parties find comfort in the *Walker* rule and contend that it supports their position. The Trust notes that expert testimony is not required, while Smith relies on the holding of *Walker* that an expert was required due to the complexity of federal maritime law and likens it to the federal bankruptcy law at issue in this case. We agree with Smith and the trial judge that an expert was required here.

The facts of this case demonstrate that it was at least as complex as those at issue in *Walker*. Here, two veteran attorneys and two local federal judges did not believe that the Assignment needed to be recorded or that it had extinguished the prior state judgments. In what appears to be a question of first impression, the Ninth Circuit disagreed after considering the interplay of two Washington statutes and federal bankruptcy regulations. These were not matters "within the common knowledge of lay persons." If five federal judges can split three to two over the effect of the Assignment, then certainly expert testimony was necessary to establish the attorney's standard of care.

8

No. 31203-8-III
*Townsend v. Smith*

Although the Ninth Circuit ruling established the legal effect of the Assignment, it does not inform about what local attorneys should have known or how they should have acted in advance of that ruling.

The Trust emphasizes that the pending trial would have been to the bench and that the Ninth Circuit ruling had established that the Assignment was defective, effectively determining the breach element as a matter of law and making the matter comparatively easy for the trial judge who then would not need expert testimony. We disagree. The purpose of expert testimony would be to establish the attorney's standard of care. The Ninth Circuit ruling did not do that. The standard needed to be established by expert testimony in light of the complex facts of this action.

We agree with the trial court that in light of legal complexities of federal bankruptcy law as it interacted with Washington judgment and homestead law, the standard of care for Washington attorneys dealing in these matters was subject to proof by experts. It was not a matter within the common knowledge of lay persons or a state trial judge. For these reasons, we agree that the trial court correctly dismissed this action on summary judgment.[3]

---

[3] The Trust also argues that its action against Smith for his failure to recommend that suit be brought against Delay Curran would have survived summary judgment if the court had granted its request to amend the action. We do not address that claim in light of the trial court's decision not to include it in the case.

9

*Amendment of the Complaint*

The Trust also argues that the trial court erred in refusing to grant its motion to again amend the complaint to add the theory that Smith committed malpractice by failing to recommend that it bring a malpractice action against Delay Curran concerning the drafting of the Assignment. The Trust has failed to establish that the court abused its discretion in denying the request.

A party has the right to amend a pleading once as a matter of right, provided that the amendment is timely; in all other circumstances, an amendment must be granted by the trial court. CR 15(a). The decision to permit or deny an amendment to the pleadings is reviewed for abuse of discretion. *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The denial of a motion for leave to amend does not constitute an abuse of discretion where the proposed amendment was futile. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 729, 189 P.3d 168 (2008).

Smith argues that the proposed amendment was untimely, futile, and would have failed for lack of expert testimony concerning the standard of care just as the existing complaint did. We do not address the standard of care related argument for the same reasons we did not discuss it previously—the amendment was not granted, so there was no need to address the hypothetical question of whether or not it would have survived

10

summary judgment if the amendment had been permitted and subsequently challenged by Smith for evidentiary insufficiency.

The futility argument appeared to have some traction before the trial court. The trial judge noted that she may have erred in dismissing Delay Curran from the case. Smith argued, as the Trust had in opposing Delay Curran's motion for summary judgment, that no malpractice cause of action accrued prior to the Ninth Circuit's ruling in 2009 established that the Trust had been harmed. A change in ruling by a trial court was similarly at issue in *Paradise Orchards General Partnership v. Fearing*, 122 Wn. App. 507, 94 P.3d 372 (2004), *review denied*, 153 Wn.2d 1027 (2005). There the attorney representing a seller had drafted the sales agreement, including a remedies clause. When the sale fell through, litigation resulted and the trial judge interpreted the clause as limiting the remedies available to the seller. The seller then settled with the buyer on less favorable terms than desired and sued its attorney for malpractice. *Id.* at 511-13. The trial court ruled that the first judge had erred in the interpretation of the remedies clause and found no legal malpractice. *Id.* at 513. This court agreed that the client's remedy was to challenge the judge's ruling rather than sue the attorney. *Id.* at 515, 520. The judgment in favor of the attorney was affirmed. *Id.* at 520.

If the trial court had changed its mind about the timing of the malpractice action against Delay Curran, it could easily decide that amending the complaint would have been futile because Delay Curran had been timely sued and Smith's alleged failure to

pick up on the issue in 2005 was irrelevant since the harm did not arise until 2009.[4]

Given the court's commentary, we are not certain if the court relied upon that reasoning in its rejection of the request for leave to amend and therefore do not further analyze that point.

It does appear that the trial court denied the motion on timeliness grounds. We believe that was a tenable basis for ruling. Delay Curran received its summary judgment in late April 2011. The deadline for amendments under the case scheduling order was August 1, 2011. The request for leave to amend was not made until 2012 in response to Smith's motion for summary judgment. The Trust had time after Delay Curran was dismissed to seek an amendment before the scheduling order's deadline. It did not.

On that basis, we conclude the trial court did not abuse its discretion by declining permission to amend the complaint once again. Although it may have had additional reasons for denying the request, its determination that the motion was untimely was a tenable reason for doing so. Again, we see no trial court error.

---

[4] Contrary to the Trust's arguments, the law of the case doctrine would not apply against Smith who was not party to Delay Curran's motion for summary judgment. The Trust was the only other party to that action and Smith was not bound by its results since he did not take part in the motion.

No. 31203-8-III
*Townsend v. Smith*

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Kulik, J.

_____
Siddoway, J.